In Re Reed Elsevier. The key issue that I want to talk about is the propriety, if you will, of the board's framing of the genus for the services of the Lawyer.com application. That's the analysis for generics. Based upon the entire scope of the website, and including services that were specifically deleted from the application during the prosecution. Now, the Lawyers.com mark does identify online information services in a couple of areas. One of them is in the area of lawyers. Finding a lawyer, researching lawyers, hiring a lawyer. It also provides information generally about the law, legal news, and legal services. And these are distinct services. The application was originally filed. It covered everything. And during the course of the prosecution, based on positions that the examining attorney has taken, the coverage for those information services related to lawyers was specifically deleted from the application. I think the issue here comes, and I should back up, the specimens that were originally filed in the application that was submitted covered all the services that were available from the website, including those related to lawyers. It is a single website, and I think that gets to the crux of the issue that the board has and that we have with the board's resolution of what the proper genus was for the services. The board looked at the entire website in coming to the conclusion that the proper genus was online information services, generally speaking, relating to the law, legal news, legal services, and central and inextricably intertwined with that, information about lawyers and from lawyers. We see that as error here because we specifically deleted those services from the coverage of the application and felt that the analysis for the genus of the services should have been restricted to those services for which supplemental registration coverage was being sought. Not only did we specifically delete from the application coverage for the information services relating to lawyers, we also had separate sections within the website, one of which, Law Today, really had nothing to do with lawyers or information about lawyers. It was strictly a section about articles, legal news, headlines, interesting cases, and what not. This is really the scope of the service coverage that was left in the application at the time that we took the case to the trademark trial in Hillborough. It's our position that the services are rendered through a website. The fact that there may be multiple services offered through that website doesn't mean that all the services on the website are relevant to determining the proper genus for the generic determination. And it ought not be any different than when we look at a business or a business location that's offering multiple services. By way of example, from some of the cases cited in the briefs, we have the Magic Wand case where we had the mark Touchless, the subject of a registration for automatic washing services. The registrar also sold washing equipment. And the argument and the alleged evidence was that Touchless was generic for the washing equipment. But the court focused the inquiry for the purposes of genericness for the mark subject of registration for the automatic washing services, notwithstanding that there was more to the business than just those services. Similarly, with the MasterCard Amex case, cited in the briefs, a board case where Gold Card had previously been determined to be generic for credit card services by the district court. On a motion for summary judgment, MasterCard was taking the position that it was generic for those services and it's also generic for the related and service services guaranteeing the checks of depositors who carry this ID card, the Gold Card, American Express card. But the board acknowledged there in denying that motion for summary judgment that a term can be generic for one service and not for a related service. And that's really what we want here is to get the focus on the specific services on that website which are not subject of coverage for the application at this point. Do you think, I'm struggling with the notion of how broadly your argument extends, but just to take an example, suppose Jiffy Lube were to seek registration of the mark oil change and after being confronted with the rejection on the grounds that we can't get oil change for a company that does oil changes, they said, well, we really only want this for, they put down, auto maintenance and incidental repair, which are services that they also provide in addition, of course, to the oil change, but they leave out the term oil change. Do they get a registration on that situation? Well, maybe, maybe not. What would be the reason that they wouldn't? They wouldn't get it. In other words, you're the examiner. What's the correct thing for the examiner to do to say no in that setting? As an examiner, I've got to determine that the proper genus for inquiry on the genericness are these particular services, the maintenance services, which may involve oil change as part of the maintenance service, and then secondly, I've got to show by substantial evidence that the primary understanding of consumers of the term oil change is maintenance services. That's the Martinian two-step analysis. And so if I frame the genus properly, but can't come up with substantial evidence of the primary consumer significance, then the registration should be omitted. Again, it's our position that the fact that it's one website that has these multiple services shouldn't be used against an applicant any differently, or they shouldn't be approached any differently than any other business that might be offering multiple services. And I think that if we get to the point where we are focusing just on the services that are being, for which registration is being sought, and make our genus determination, and then evaluate the evidence in terms of that primary significance, in the present case, we don't, we won't have a finding of generics. And for those reasons, we ask that the court be the first to support this decision. Thank you, Your Honor. May it please the court. Your Honor, I think that this case can be disposed of, or at least disposed of with response to four fairly straightforward questions. I think you start with the learned hand question, what does somebody think of when they hear the word lawyers.com? And I think they think of information about lawyers on the internet. The second question is, does Mark DelCarlo use it that way? And they admit at page three of their reply, straight out, that there is no dispute that their web page contains information about lawyers. So the third question, which is really where the dispute lies, I'll get back to this in a second, is has their ID, has their ID somehow carved this out so discreetly? I think the answer is no, because just looking at the ID itself, it includes information about lawyers, legal services, and things like that. And the fourth question is, will competitors need to use this? And usually that question is asked in a hypothetical. And here we have eight examples where states are using it, types of laws are using it, where the TTAB said this is not a question of perception. We have detailed evidence, eight examples of where people in competitive areas need to use this. So the third of those four questions is really kind of where the case has morphed to. I think the only dispute now is, has their ID somehow, has their distributive goods somehow discreetly, as they use the term in their brief in an argument, carved this out? The answer to that is no, I think the simplest way is just to look at the web page. In all the dot-com cases, both from this court in the Steele building, which is the Avedal case, which is the PACS dot-com case, as well as the Fourth Circuit, the previous dot-com case, what everybody does in all those cases is at least look to the ID and then look to the web page. It's the specimen. It shows how they use it. And on every one of their web pages, there is a header that says, find a lawyer. It's not like there are pages and pages and pages that don't have this. Every one of their web pages has this. I mean, this is what Martindale-Hubbell does. I mean, if elsewhere is the owner of Martindale-Hubbell, this is what it's doing. And whether or not there is other information on those pages, which I'll concede there is, there has to be, doesn't change the fact that there is information about lawyers on their web pages, and that that's how one would interpret their ID. Now, the Jiffy would be an example. I think that was a very good example. And they basically, I believe, conceded that you couldn't register for the species, for the oil chain. But if you brought it out to automotive services, which is a genius of them, you would get to register the word for even a foreign place. And the case law is directly to the contrary. This court has never spoken about it. But the Second Circuit has, for example, in a case which summarizes a number of cases, Otokoyama, O-T-O-K-O-Y-A-M-A v. Wino, Japan. And that can be found at 175 F. 3rd, 266. And that's the Second Circuit case out of 1999. There's a district court case, Mesa v. Microsoft Corp., 1935 F. 2nd, 507. And that's out of Vermont in 2004. And they cite a number of cases that say cheddar cheese, for example, is one of the analogies. You can't get the mark cheddar cheese for cheddar cheese. And so somebody said, well, what about cheddar cheese for cheese? And they said, no, you can't do that. And they cite examples of cases where just by running out your ID, you somehow can now Or it would be just the opposite. You're getting broader protection for a generic word. And the law does not allow that. I think you have to ask yourself the question, what happens if we register this term? Looking from the other perspective. What is NewGeorgiaLawyers.com going to do? Can they advertise about lawyers without including this type of information? The best case that probably talks about discreteness, where you can carve it up in an ID, is the seeds case out of this court, where they kind of suggest, look, if you have the mark seeds, you're selling couches. It's generic. But if you're selling tickets to baseball games or the Super Bowl, it's not. But you have to, I think, not give the applicants such freedom to play around with IDs, like it seems to me Mario would like to do here. Service marks are harder than goods marks. When you have a good, it's a thing. It's a noun. When you have services, there's more flexibility and more vagueness in the way somebody can describe services. We could describe two different services, I think, saying things slightly differently. And to allow the applicants, which they seem to now be wanting to do, to try to manipulate or avoid charitable refusal by simply playing around with certain words in the ID, seems to me to be not a good thing. If they have information from our accounting services and information from legal services and they somehow bifurcated the two, maybe that would count. But we don't have anything close to that here. I think if you look at the, people have not made this argument as much, but if you look at the cases, if you look at the patents.com case, the ID there was computer services for tracking things. It had nothing to do with patents. So what did the court do? It looked to the webpage and it said one of their things they tracked was patents. If you looked at the Freedies case, there was an argument there that somehow their ID disqualified them from the charitable inquiry. They weren't selling free things. They were telling people how to get free things. And the Fourth Circuit said, and I'm quoting Ms. Pardman, that razor-thin distinction, they said, doesn't have to matter. We're not going to let somebody use a word slightly differently. Here, they have information about lawyers on their webpage. If you look at both the board and the examiners that went through painstakingly all the different aspects of their pages, information about legal services is about lawyers, the information about the law involves lawyers. It's not like there's so many textbooks. If you look at their webpage today, which is only slightly differently than it was when they submitted it, because you can actually play around with it, everything is geared towards finding a lawyer. If you click on there, they make a big deal about, well, we have all this information about the law. Well, if you click on intellectual property, you know what you find? A paragraph. General boilerplate discussion about what intellectual property is. And then it says, here's how you find a lawyer. So this is what they're doing. They have some bells and whistles on it. They have some other information. But it doesn't change the fact that they use it with information about lawyers and that their current ID clearly covers that, especially when you look at it in view of their webpage. What do you think is the right test to use here? And what I'm looking for help on here is with specific reference to a disclaimer that seems to give up the particular service that seems most directly related to the mark, but in which the person seeking registration actually provides that service. Take this case. Suppose instead of disclaiming what they disclaim, they disclaim it even more broadly. And they have one small feature on their website, which is, let's say, bumper stickers that are funny about lawyers. And they'll send you a bumper sticker about lawyers. So they say, well, this is lawyers.com. It is for bumper stickers. They're interested in getting lawyers.com, and they'll deal with the problem of the description later. Do you think that it is within the board's authority to say, nonetheless, we've looked at the website, and this just isn't what you do? Well, I think there's kind of two answers to that question. One, the specimen and the ID have to be reflective of each other. The specimen is evident. The webpage is evidence of how they're using it today. And their ID has to be consistent with that. If the two didn't match up, they will reject it for other reasons, more for procedural reasons. But the second answer would be, let's assume we use the analogy, let's assume it's a Vitamix, or let's assume it's a greeting card, and it's a supermarket or Walmart, and they sell those. But they sell lots of other things. I was thinking about that. I think that that case probably wouldn't be generic. It would be a much harder case, because it's not the primary. The word primary is what people primarily think of when they hear the term. So I think it is a bit of a sliding scale. I think where the primary significance of the word is X, and the primary use of it is X, and it's covered in the ID, and it's how they're using it, it moves. I think if it's, well, it's possibly one tiny little thing that they're doing, then it would not be quite so easy to do that. I think it does come down to, if you think of descriptiveness and generics, not being a trademark expert, as I was revealing, they're kind of a sliding scale. Descriptiveness is merely descriptive. It's kind of at the low end of descriptiveness. And generics is very, very, very descriptive. So just as they kind of slide, I think depending on how the ID, what their word was, and what they're actually doing would somehow be reflective of that. And the more they got away from it, it might be descriptive, but it would not be generic. But what's interesting here is they haven't changed what they're doing. They've just kind of tweaked the ID. And if you take a step back, and somebody walked in without the amendment here, and all they did was say, I want a web page about information about the law and legal services, and they would lose. Well, you'd think that would include lawyers. I think things would be us. So can they even amend it, given the way they've done it? I don't think you want to get into a doctrine of prosecution. You know, the Fesco case is coming out across the hall. But I don't think you want to get into a doctrine of prosecution history estoppel in the trademark law. I think the goods are what they say they are. It's really reflective more of how they're using them. I think only until recently have you gotten this, well, we'll describe what we're doing a little bit differently. Clearly, if they're selling boats and cars, and only going to ask for coverage from boats instead of cars, they're allowed to do that. But I think to put the I.D. before the reality of the situation is wrong. And I think this Court has never said that. They say you have to look at the I.D. to get a sense of what's going on. You have to look at the web page. But the reality of the situation seems to me to be the dominant thing here. And that's why the Board was struggling with this. They would like a clear message that, you know, the game now is not so much to change the word rules. It's to change the I.D. And if the Board's hands are tied, that so long as you take that one word out of the I.D., it's not to merit that they will have to issue these or at least publish them. Let me see if I understood. I may have misunderstood you when you gave the boats example. If somebody's selling boats and cars, and they want boats, and they come in and they say for a business that includes the sale of cars, but they didn't use the reference to boats. They can do that. They can cover. They can ask remarks only on very clear, very categorically discreet-type things. Like if someone was selling couches and seats for movie tickets, if somebody was even doing this. I'm not so sure in reality this really happens. But in theory, you can ask for registration on only some of your goods. It gives you limited protection. What's happening here is, you know, they're not doing it as discreetly as they want, as they suggest. And they will get the same exact coverage, whether they disclaim this or not. Yeah, that's what I'm wondering. Marlowe could come in and ask for couches, and they say, well, this is for all of our stuff except the couches. I don't think they could do that. I think that— Why is that different from the boat-car case? Well, I think if— Marlowe does sell couches, so I'm not so sure what else they're going to do. Well, but the boat-car people sell boats and cars. Right. But I didn't make the law, but the law is— Do you think that that's a good rule? I think that—I think that that theory can happen, but it doesn't typically happen. So I wouldn't let the exception drive the norm here. And what's happening here is, Margelle Hubbell wants—you know, they're not saying they want a fair couch. I mean, they couldn't even do that because that's not what they want. And look at—if you looked at the New Jersey lawyers by couch, this is an example. I'll pick out one of them, and I think it's page—it's page 186. I'm sorry, but it's there. It's at page 141. It's NewJerseyLaw.Lawyer.com. They're like, well, even assuming we gave them this mark and they didn't want information about lawyers, I'm not so sure how this could exist. You know, it's the same exact stuff. It has the same look for a lawyer. So to the extent somebody can carve something up, they haven't done it here. And I think the law on IDs is not that—hasn't really been developed about, okay, you look— clearly it says you look at the ID, but not the line. Thank you very much. Thank you. First, I'm not aware of any process procedurally, by regulation, by decision, in practice, before there's been a trademark office, that there's ever a weighing of how important or how much of your business activity is this service versus that service, and that shouldn't be the determination. First of all, this is an application for registration of a mark on supplemental registry, which has very little benefits. It only says that this mark is capable of functioning as a mark for these particular services. To the extent that registration issues for those particular services, it doesn't give the right to use that registration against a NewJerseyLawyers.com who is making a very descriptive use of Lawyers.com in connection with the site looking for— or helping to identify lawyers in New Jersey. But what if the NewJersey.com also has these ancillary services, such as the ones that are specifically asserted in the description of the Martinez-O'Connor mark? If they do, and if they use— in the manner of a mark, for services which are then covered by the registration, and if at that point in time, Reid Elsberg could show that it had acquired the required secondary meaning, distinctiveness in Lawyers.com for information services on the law, on legal news and on legal services, and that what New JerseyLawyers.com was doing, then there could be an issue of infringement. That's right. But, you know, that site didn't have those— didn't have the kind of information offerings that we're talking about here. Certainly the Law Today section of the original specimen was fine. I just want to get to one point that counsel made. This is a situation where the applicant wasn't— again, wasn't playing games with semantics. We tried to make it very clear to the examiner that we were trying to delete coverage for all information services relating to lawyers. And our— 881 in the appendix, in our response to the examiner, we said, applicant is now not seeking registration of its marks in connection services relating to obtaining a lawyer, searching for a lawyer, employing a lawyer, or other, quote, lawyer information services. It's a bit of gamesmanship, I think. If this really comes down just to a question now, they're saying, well, you didn't go far enough. We could have agreed upon a description of your services that would have been clear so that we excluded anything that's related to lawyers, and we'd be happy to do that. But that's not the way that the Trademark Office typically operates. The statute says a mark which is capable of distinguishing a business's products or services shall be registered unless— and so you start with the premise that it's registrable unless there's a statutory or a regulation against it being able to function as a mark and be registrable. So, again, the attempt in the record is very clear that the language that was used in the identification of the service now was fully intended to delete coverage for any of the lawyer information services. And that's a procedural point, really. If that needs to be clarified early, that's something that could be worked out. But the substance was clearly— the prosecution effort was very clear in terms of trying to focus strictly on those services that related to information services related to law, legal use, and legal services. Thank you. Thank you.